[No. 11896.  Department One.  October 9, 1914.]

THE STATE OF WASHINGTON, *on the Relation of J. T. Dorrien, Respondent*, v. F. A. HAZELTINE, *Appellant*.[1]

CONTEMPT—PROCEEDINGS—AFFIDAVIT—NECESSITY. Under Rem. & Bal. Code, § 1052, in cases of constructive contempt, the facts constituting the contempt must be shown by affidavit, and omitted facts cannot be supplied by the proof.

CONTEMPT — NEWSPAPER COMMENT ON TRIALS. Any publication pending a suit, reflecting upon the court, parties, or witnesses and tending to embarrass or influence the court or prevent a fair trial, is contempt of court.

SAME—LIBERTY OF THE PRESS. Constitution, art. 1, § 5, guaranteeing the right of free speech and providing that persons shall be responsible for the abuse of the right, does not mean a license to assail the court, parties or witnesses in pending causes, or excuse contempt of court by publication of matter having a reasonable tendency to cause substantial prejudice to a party in a pending cause.

[1]Reported in 143 Pac. 436.

CONTEMPT—CONSTRUCTIVE—NATURE. A proceeding for constructive contempt is *quasi* criminal and every reasonable doubt, whether of fact or law, must be resolved in favor of the accused.

CONTEMPT—PROCEEDINGS—SUFFICIENCY OF COMPLAINT—NEWSPAPER COMMENT. In constructive contempt for a published article which assumes that one R. will be used as a witness and comments thereon, an affidavit for contempt in that the article "reflects upon the witness" is insufficient, where it names no witness to be used at the trial; as the case is *quasi* criminal, and the affidavit cannot be extended by a liberal construction.

SAME. In constructive contempt by press comment on a pending case, the statements that the prosecuting attorney declines to be frightened or terrorized and filed the information because of the weight of the evidence and his acquaintance with the defendants, does not constitute contempt as unfair press comment on a pending trial, since it does not have a reasonable tendency to create prejudice or prevent a fair trial.

Appeal from a judgment of the superior court for Pacific county, Wright, J., entered September 24, 1913, upon a trial and conviction of contempt, after a trial to the court. Reversed.

*Bond & Eddy*, for appellant.

*Robert G. Chambers*, for respondent.

Gose, J.—The appellant was convicted of constructive contempt. The affidavit alleges, that the appellant was the owner, editor, and publisher of the South Bend Journal, a weekly newspaper of general circulation in Pacific county; that, on the 2d day of August, 1913, the judge of the superior court of Pacific county adopted and caused to be served on all the owners and editors of papers printed and published in his judicial district, including appellant, the following rule, which, omitting title, is as follows:

"The publication by newspapers printed or circulated in either of the counties of this district of matter or comment concerning causes pending in the superior court of such counties, reflecting upon or commending the cause of action or defense, the motives thereof, or parties, counsel or witnesses, in such manner as may tend to excite or otherwise in-

fluence public opinion concerning the merits of such cause of action or defense, is forbidden. This rule is not designed to prevent a full and fair report of any proceeding pending in this court, except where forbidden by special rule, nor temperate and impartial comment thereon. Continued and partisan discussion of such pending causes, especially those triable by jury, is subversive of the due administration of justice and will not be tolerated;"

that, on the 8th day of August following, there was pending in the superior court of Pacific county a case entitled The State of Washington, plaintiff, v. J. W. Jackson and others, defendants, which the appellant knew; that, on that date, in violation of the rule and order of court, the appellant caused to be printed, published, and circulated in his newspaper in Pacific county the following article, commenting on such action:

"JUDGE WRIGHT ISSUES RULES ON COURT NEWS.
"OUTRAGEOUS ATTACKS OF RAYMOND PAPERS AND PILOT THE CAUSE.
"WITNESSES ARE SLANDERED,—STAR WITNESS OF THE PROSECUTION WAS FORMERLY FOR DEFENSE AND WASN'T SO BAD THEN.

"It will be remembered that the Journal took particular pains to editorially urge its readers not to prejudice the conspiracy case but to wait until the evidence was all in and for its trouble got roasted worse than ever by the Reprint, which went so far as to charge that the suit was a frame-up. This naturally caused the court to take notice of the charges coupled with the bitter attack made by the Pilot last week. The Journal has become accustomed to standing alone against the 'Three Disgraces' the Herald, Pilot, Observer and their new satellite, the Reprint, and we must have been on the right side for the Journal has managed to win with the people at every election. As we understand it, Judge Wright is not attempting to legislate by court orders and to amend the law regulating free speech but to call attention to its provisions.

"Anent the double column display, front page onslaught in the last Pilot on Prosecuting Attorney Hewen and the Journal on the case brought by the prosecuting attorney against J. W. Jackson, Martin C. Welsh, H. B. Welsh and P. W.

Culver, charged with corruptly conspiring to pervert and obstruct the administration of law in the case of Coleman vs. City of Raymond, the Journal takes the position that it is not the place of a newspaper to either endeavor to prejudice future juries or intimidate public officers in the discharge of their duties. Upon the publication last week of the extremely unwarranted and abusive attack in the Pilot, the judge of the superior court made and entered an order forbidding the press to indulge in unwarranted comment on pending litigation. The Journal has no wish to transgress in this particular, and whatever it says will be strictly within the bounds of legitimate discussion. Notwithstanding that the Raymond Reprint (A. C. Little), Raymond Herald and Willapa Harbor Pilot have been training their batteries of insinuation on the prosecuting attorney ever since the above named case was brought, that official has made no answer and authorized no statement by the press, believing that the place for a lawyer to try his cases was in the court room and not prematurely in the newspapers. . . .

"It may be said that the prosecuting attorney declines to be frightened or terrorized by anything that a subsidized press in the county may say. He knows that they do not represent a desire for justice and nothing better than a small minority of public sentiment. He objects moreover to the witnesses for the state being maligned and discredited in order to prejudice public sentiment and thus to a measure the result of the trial.

"So far as the prosecuting attorney's office having interested itself in assisting Coleman to collect his damages claimed from the city of Raymond, as a fact, Mr. Hewen never was acquainted with Coleman until less than three weeks ago, hence he could not have been influenced by friendship, and certainly not from personal gain. Hence, the only alternative left to suppose the prosecuting attorney is bringing the case is the weight of the evidence in his hands and his acquaintance with the defendants. .

"The attack on witnesses of the state by name was most wanton and unjustified by facts. In prosecution of crime the state cannot select its witnesses. In following the lawless trail of an offender the state necessarily sends its investigators over the same ground and deals with the same persons.

"While there is nothing whatever to justify the slanderous strictures in the Pilot on the witness, Maggie Rose, yet in taking her as a witness for the state the prosecutor has only adopted a defendant's witness in the case of Coleman vs. City of Raymond. It must be remembered that the city government of Raymond in that case placed Mrs. Rose on the witness stand for the city, vouched for her integrity and credibility by placing her there and took her deposition in Portland for the express purpose of use on the trial to follow here. She is certainly as good and worthy today morally and every way as she was when under the influence of the city officials of Raymond. There is nothing known to be akin between the W. C. T. U. and the Raymond City government, and it is not likely that Mrs. Rose and family were beneficially chaperoned by the satellites for the city administration. Furthermore, Mrs. Rose has hitherto enjoyed the confidence, especial attention and regard of the Raymond city government, is a mother with a growing family, lives in a respectable part of the city of Raymond and is entitled to protection and respect even if she has been so unfortunate as to have been forced into association with the emissaries of the city government of Raymond. So far as yet disclosed she will compare favorably in moral character with quite a number of popular Raymond officials.

"Finally, if the subsidized press of Pacific county can rehabilitate Seattle's 'Wappy' and the crooks all over the United States ferreted out by the Burns Detective Agency, it will be conceded that it can make a glorified angel out of Lucifer and it will be necessary for all to yield obedience to the reign of evil."

It is further alleged that such article commented on the case of State of Washington v. J. W. Jackson et al.,

"in such manner as tended to influence public opinion concerning the defense of said defendants, and reflected on the witnesses and defendants in said action, and the motives of said defendants, and that said statement is a partisan discussion of said cause now pending as aforesaid, and which cause is triable by a jury. That said statement so printed, published and circulated is embarrassing to the court in the determination of said cause, and is subversive of the due and orderly administration of justice."

The appellant demurred to the affidavit, upon the ground that it does not state facts sufficient to constitute a contempt. The demurrer was overruled, and the appellant answered, admitting the publication of the article, and admitting that the case of State v. Jackson was pending as alleged, and that he knew it at the time the article was published.

It is conceded that the rule promulgated by the court in itself is without efficacy. Its purpose was to warn the newspapers of the judicial district over which the judge presided that the general law in relation to contempt would thereafter be enforced, and to cause such papers to desist from further discussion of the merits or demerits of pending causes.

In cases of constructive contempt—that is, contempt of court not committed in the immediate view and presence of the court—"the facts constituting the contempt" must be shown by affidavit. Rem. & Bal. Code, § 1052 (P. C. 81 § 1847). Facts omitted in the affidavit cannot be supplied by proof. *State ex rel. Olson v. Allen*, 14 Wash. 684, 45 Pac. 644; *State ex rel. Victor Boom Co. v. Peterson*, 29 Wash. 571, 70 Pac. 71; *In re Coulter*, 25 Wash. 526, 65 Pac. 759; *State v. Canutt*, 26 Wash. 68, 66 Pac. 130; *Hutton v. Superior Court etc. of San Francisco*, 147 Cal. 156, 81 Pac. 409.

In the *Allen* case, it is said:

"The fact that proof was subsequently introduced upon the trial tending to show that he did have possession of the books is immaterial, for it was necessary that there should have been a sufficient affidavit in order to give the court authority to proceed with the hearing."

In addressing itself to the same question, in *Hutton v. Superior Court etc. of San Francisco*, the court said:

"It is well settled that where the contempt is committed without the presence of the court, the affidavit of facts forming the basis of judicial action must show upon its face a case of contempt; and if it does not, the court is wanting in jurisdiction, and the order of contempt is void and will be annulled on certiorari. (*Overend v. Superior Court*, 131 Cal.

*280, 286, 63* Pac. *372; Rogers v. Superior Court,* 145 Cal. 88, 78 Pac. 344.) In such a case, it is immaterial what may be shown to the court upon the hearing, or specified and found by the court in its decree adjudging the accused guilty of contempt."

A substantial and general statement of the facts will give the court jurisdiction, provided the facts alleged constitute a contempt. 9 Cyc. 38; *In re Toepel,* 139 Mich. 85, 102 N. W. 369; *State ex rel. Webb v. District Court,* 37 Mont. 191, 95 Pac. 593.

We have held that the court has inherent power to punish for contempt, both direct and constructive, a power proceeding from the constitution, and that, while the legislature may not take away the power, it may define the procedure by which the recusant party may be brought before the court, and the procedure to be followed at the trial. *State v. Buddress,* 63 Wash. 26, 114 Pac. 879; *In re Coulter, supra; State v. Tugwell,* 19 Wash. 238, 52 Pac. 1056, 43 L. R. A. 717. In *State v. Tugwell,* this court reviewed at length the authorities on the question of constructive contempt, and quoted approvingly from 2 Bishop, Criminal Law, § 259, as follows:

"By the commonly accepted doctrine, any publication whether by parties or strangers relating to a cause in court, tending to prejudice the public as to its merits, and to corrupt or embarrass the administration of justice—or reflecting on the tribunal or its proceedings, or on the parties, the jurors, the witnesses, or the counsel—may be visited as a contempt."

It also quoted from Rapalje on Contempt, as follows:

"Any publication, pending a suit, reflecting on the court, the parties to the suit, the witnesses, the jurors or the counsel, is a contempt of court."

Following these quotations, the court said:

". . . but if the article is calculated to embarrass or influence a court or prevent a fair trial between suitors in court either by disturbing the independent verdict of the

jury or the independent and unbiased conclusion of the court, it is contempt, ` . . .`"

Section 5, art. 1, of the constitution, provides:

"Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."

The liberty thus guaranteed does not mean a license to assail litigants, witnesses, counsel, or the court, in pending cases. The power to try cases between litigants resides in the courts alone, and any attempt to embarrass or influence a court or jury in a pending case, whether by inflaming the public mind or discrediting witnesses, counsel, or litigants, is contempt. The distinction between liberty and license is very clearly and aptly stated in *In re Shortridge*, 99 Cal. 526, 34 Pac. 227, 37 Am. St. 78, 21 L. R. A. 755, where the court said:

"Liberty of the press must not be confounded with mere license. Liberty of the press stops where a further exercise would invade the rights of others. This provision of the constitution does not authorize a usurpation of the functions of the courts. Under the plea of the liberty of the press a newspaper has no right to assail litigants during the progress of a trial, intimidate witnesses, dictate verdicts, or judgments, or spread before juries its opinion of the merits of cases which are on trial."

As was said in *State v. Howell*, 80 Conn. 668, 69 Atl. 1057, 125 Am. St. 141:

"A sentiment favorable or unfavorable to one of the parties to the case may be made to so pervade the community as to reach the court room and the triers and interfere with the fair and impartial performance by the latter of their duties."

The essence of the offense is conduct reasonably calculated to produce an atmosphere of prejudice where a pending case is to be tried. *King v. Tibbits*, 2 British Ruling Cases 469. But the better view is that one will not be punished for a technical contempt. The matter charged must have a reasonable tendency to cause substantial prejudice to a party in

the conduct of the action, or to substantially interfere with the due administration of justice. *Hunt v. Clarke,* 58 L. J. Q. B. 490. The basis of this rule is that a proceeding for constructive contempt is *quasi* criminal, and every reasonable doubt will be resolved in favor of the accused. *Hutton v. Superior Court etc. of San Francisco, supra.*

Measured by these principles, does the affidavit state a cause of action? We think not. There is no allegation that Maggie Rose was a prospective witness in the case. If the state intended to use her as a witness, that fact should have been alleged in the affidavit. The statement in the affidavit that the article "reflects upon the witness" is insufficient. It names no witness upon whom it reflects. The article assumes that Maggie Rose would be a witness for the state. If the state intended to use her as a witness, it would have been a simple matter to allege it. In view of the fact that the case is *quasi* criminal in its nature, we do not think that the allegations in the affidavit should be extended by any rule of liberal interpretation. Even in civil cases, the complaint must contain a plain and concise statement of the facts constituting the cause of action.

In respect to the prosecuting attorney, the statement that he declines to be frightened or terrorized means nothing more than that he will do his duty, a presumption which the law indulges in favor of all public officers. The article says that the prosecuting attorney filed the information because of the "weight of the evidence in his hands and his acquaintance with the defendants." This approaches the border line of fair press comment, but it can hardly be said that it had a reasonable tendency to create an atmosphere of prejudice that would pervade the court room and prevent a fair trial of the case. The law presumes that a prosecuting attorney will not file a criminal information unless he conceives that there is substantial testimony to support the charge. The same may be said of the statement:

"In prosecution of crime the state cannot select its witnesses. In following the lawless trail of an offender the state necessarily sends its investigators over the same ground and deals with the same persons."

The writer was not speaking of the defendants in the case of State v. Jackson et al., as offenders in fact; he was speaking of offenders generally.

While the article approaches the border line between fair press comment and prohibited comment, we cannot say that, when taken as an entirety, it has a reasonable tendency to embarrass or influence the court or the jury so as to prevent a fair trial. Every case must be measured by its own facts. In the last analysis, the real test is, Did the article have a reasonable tendency to prevent a fair and impartial trial of the case to which the comment was directed? We cannot say that it did, and therefore resolve the doubt in favor of innocence. When a reasonable doubt, either in fact or law, exists in a criminal or *quasi* criminal case, that doubt must be resolved in favor of the accused. This rule is so well settled that the citation of sustaining authority is unnecessary.

The judgment is reversed, with directions to dismiss.

CROW, C. J., MAIN, ELLIS, and CHADWICK, JJ., concur.