### DETERMINED IN THE

# SUPREME COURT

#### OF

# WASHINGTON

[No. 13423. *En Banc.* July 5, 1916.]

## THE STATE OF WASHINGTON, *Respondent*, v. JOHN C. EDEN, *Appellant.*[1]

INTOXICATING LIQUORS—UNLAWFUL POSSESSION — STATUTES — CONSTRUCTION. Rem. 1915 Code, § 6262-22, of the initiative prohibition law, making it unlawful for any person to have in his possession more than the prescribed quantity of intoxicating liquors, applies only to liquor unlawfully held or obtained after the taking effect of the act, and not to an excess quantity acquired for personal use prior to the taking effect of the act; in view of the general purpose of the act to prohibit the manufacture and sale within the state, and the provisions expressly authorizing possession for personal use and the use of guests at one's residence, and in view of Id., § 6262-23 which merely makes the possession of more than the prescribed quantity *prima facie* evidence that the liquor was held for purposes of unlawful sale or disposition, without prescribing any penalty for such possession (FULLERTON, J., dissenting).

STATUTES—CONSTRUCTION. A statute capable of two constructions, one of which makes a given act criminal and the other innocent, will be given the construction which favors innocence.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 3, 1916, upon a trial and conviction of the crime of unlawful possession of intoxicating liquors, upon overruling a demurrer to the information. Reversed.

[1]Reported in 158 Pac. 967; 159 Pac. 700.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.

*Alfred H. Lundin* and *Frank P. Helsell (Walter F. Meier*, of counsel), for respondent.

MOUNT, J.—An information was filed against the appellant which, omitting the formal parts, is as follows:

"I, Alfred H. Lundin, prosecuting attorney in and for the county of King, state of Washington, come now here in the name of and by the authority of the state of Washington, and by this information do accuse John C. Eden of the crime of unlawful possession of intoxicating liquor, committed as follows, to wit:

"He, said John C. Eden, in the county of King, state of Washington, on the 17th day of January, 1916, did then and there wilfully and unlawfully have in his possession in room No. 15, in the Rainier Club, in the city of Seattle, said county and state, the same then and there being the private dwelling and apartment and permanent place of abode of the said John C. Eden, more than one-half gallon or two quarts of intoxicating liquor other than beer and more than twelve quarts or twenty-four pints of beer, in this that he, said John C. Eden, then and there had in his possession forty-nine and one-half quarts of intoxicating liquor other than beer, and forty-six pints of beer, the said intoxicating liquor, and the whole thereof, having been owned and possessed by the said John C. Eden prior to the 1st day of January, 1916, and kept by him, the said John C. Eden, for his own personal use and not for the purpose of selling or disposing of the same other than by gift to a guest in said private dwelling and apartment, to be drunk therein:

"Contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington."

The appellant demurred to this information. The court overruled the demurrer. The defendant elected to stand upon the demurrer and sentence was pronounced against him. This appeal is prosecuted from that judgment.

The sole question in the case is whether the facts stated in this information charge a crime. The prosecution is based

upon § 22 of initiative measure No. 3, relating to intoxicating liquors, found beginning on page 2 of the Laws of 1915, Rem. 1915 Code, § 6262-22. This section is as follows:

"It shall be unlawful for any person to have in his possession more than one-half gallon or two quarts of intoxicating liquor other than beer, or more than twelve quarts or twenty-four pints of beer: *Provided, however,* That this section shall not apply to registered pharmacists or to persons keeping alcohol, to be used for mechanical or chemical purposes only."

This section, construed alone without reference to any other section in the act, would seem to make it unlawful for any person to have in his possession more than the stated quantity of liquor, no matter when or how lawfully obtained, and no matter for what purpose kept, except for mechanical or chemical purposes. But we are satisfied that this section, being a part of the complete act, should be construed with reference to the whole act. It becomes necessary, therefore, to determine the intent and purposes of the act.

Section 4 is as follows:

"It shall be unlawful for any person to manufacture, sell, barter, exchange, give away, furnish or otherwise dispose of any intoxicating liquor, or to keep any intoxicating liquor, with intent to sell, barter, exchange, give away, furnish or otherwise dispose of the same, except as in this act provided: *Provided, however,* That it shall not be unlawful for a person to give away intoxicating liquor, to be drunk on the premises, to a guest in his private dwelling or apartment, which is not a place of public resort." Rem. 1915 Code, § 6262-4.

Section 5 declares it unlawful for the owner or possessor of premises to permit the manufacture or sale of intoxicating liquors therein, and provides, in case of violation, for the abatement of such premises as a nuisance.

Section 6 makes it unlawful for a person to solicit orders or advertise for the purchase of intoxicating liquors.

Section 7 relates to druggists and the sale of liquors by them for certain purposes.

Section 8 relates to physicians' prescriptions for the use of liquor as a medicine.

Section 9 declares that the issuance of a United States internal revenue stamp or receipt to any person as a retail dealer in intoxicating liquor shall be *prima facie* evidence of the unlawful sale of intoxicating liquors by such person.

Section 10 makes it unlawful to maintain club houses for distribution of intoxicating liquors among the members.

Sections 11 and 12 relate to search and seizure of intoxicating liquors and proceedings for their condemnation when contraband in character.

Section 13 relates to exoneration of witnesses from self-crimination because of testimony given in proceedings under the statute.

Section 14 authorizes the employment of associate counsel to assist the prosecuting attorney in prosecutions.

Section 15 provides the mode of procedure by which adult persons may from without the state lawfully purchase and obtain possession of two quarts of intoxicating liquor other than beer, or twelve quarts of beer, at any one time upon permits issued by the county auditor.

Section 16 limits the right of every such person to take out such a permit to once in each twenty-day period.

Section 17 provides the methods by which druggists may obtain intoxicating liquors.

Sections 18 and 20 relate to the transportation of intoxicating liquors by common carriers and the manner in which such liquors shall be labeled.

Section 19 provides that the county auditor shall not issue permits to persons who have been convicted of violation of the law, or to persons holding United States revenue stamps or receipts for the sale of intoxicating liquor, or to any person more than once in twenty days.

Section 21 declares it unlawful for any person to make certain false statements for the purpose of obtaining intoxicating liquor.

Section 22 is hereinbefore quoted.

Section 23 provides as follows:

"In any prosecution for the violation of any provisions of this act, it shall be competent to prove that any person had in his possession more than two quarts of intoxicating liquor other than beer, or more than twelve quarts of beer, and such possession and the proof thereof, shall be *prima facie* evidence that said liquor was so held and kept for the purposes of unlawful sale or disposition." Rem. 1915 Code, § 6262-23.

Sections 24, 25, 26, and 27 are unimportant to the consideration of the question here involved.

Section 28 is as follows:

"Within ten days after the date when this act has become operative, every person except registered druggists and pharmacists shall remove or cause to be removed all intoxicating liquor in his possession from the state, and failure so to do shall be *prima facie* evidence that such liquor is kept therein for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of this act; *Provided, however,* That this section shall not apply to alcohol kept for chemical or manufacturing purposes, or to one-half gallon of intoxicating liquor, other than beer, or twelve quarts or twenty-four pints of beer held by an individual: *And, provided further,* That for said ten-day period of time, it shall not be necessary to obtain any permit or permits for the shipment of any such intoxicating liquor, lawfully held within the state at the date this act goes into effect, to points outside of the state." Rem. 1915 Code, § 6262-28.

Section 29 makes it unlawful for any person to bring into the state any intoxicating liquors in excess of one-half gallon of liquor other than beer, or twelve quarts or twenty-four pints of beer, within any twenty-day period.

Section 30 makes it the duty of the attorney general to enforce the provisions of the act.

Section 31 provides that all persons convicted of any violation of the act, if punishment therefor is not specifically provided, shall be punished by a fine of not less than $50 nor more than $250, or by imprisonment.

Section 32 provides a penalty for a second and subsequent convictions.

Section 33 provides that the act shall take effect and be in force from and after the 1st day of January, 1916.

It is perfectly plain that this act was passed for the purpose of preventing the sale of or barter in intoxicating liquors within the state. The use of intoxicating liquors is nowhere prohibited. Section 15 recites that any person over twenty-one years of age may ship into the state from without a limited quantity of intoxicating liquors. The whole purpose of the act, as disclosed by the act itself, is to prevent the barter and sale of intoxicating liquors within the state. It permits the use by persons lawfully purchasing the same. When the act was passed, it was recognized that intoxicating liquors would be held within the state by persons who had previously been engaged in the sale thereof. And it is common knowledge that, prior to the taking effect of this act, the barter and sale of intoxicants within the state was permitted by law; and it is reasonable to suppose that, at the time this act would take effect, namely, on January 1, 1916, intoxicating liquors theretofore lawfully obtained would be in the possession of persons who had theretofore lawfully dealt therein. And in order that those persons might dispose of their surplus stock, § 28 was passed, which provides that every person shall remove, or cause to be removed, all intoxicating liquors in his possession, from the state, and that for a period of ten days thereafter it should not be necessary to obtain a permit for the shipment out of the state of intoxicating liquors held within the state at that date. The penalty for keeping a greater quantity of liquor was named in § 28, to the effect that failure to remove the same would be "*prima facie* evidence that such liquor is kept therein for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of this act." The keeping of such liquor was not made a crime unless made so by § 22. This section

provides that it shall be unlawful for any person to have in his possession more than the stated quantity of intoxicating liquors.

After a careful review of all the sections in the act, we are satisfied that § 22 relates only to the unlawful possession of intoxicating liquors acquired after the act became effective. Section 23, immediately following § 22, provides that "In any prosecution for the violation of any provisions of this act, it shall be competent to prove that any person had in his possession more than two quarts of intoxicating liquor other than beer, or more than twelve quarts of beer, and such possession and the proof thereof shall be *prima facie* evidence that said liquor was so held and kept for the purposes of unlawful sale or disposition." This section, following immediately as it does § 22, which provides for the substantive offense, was intended to, and does, provide a rule of evidence, which places upon the accused the burden of proving that the liquor held by him in excess of the quantity provided for was not for sale or unlawful disposition. When this fact is proven, then there is no offense. If the act intended to make it a crime for a person to keep what he had lawfully acquired, that idea ought to have been, and no doubt would have been, expressed in plain words in the statute.

This court has held in several cases that where a statute is capable of two constructions, one of which makes a given act criminal, and the other innocent, the statute will be given the construction which favors innocence. *State v. Anderson,* 61 Wash. 674, 112 Pac. 931; *State ex rel. Dorrien v. Hazeltine,* 82 Wash. 81, 143 Pac. 436; *State v. Furth,* 82 Wash. 665, 144 Pac. 907. And since we find no express provision in the statute making the keeping of liquors lawfully obtained unlawful by express provision, under this rule it follows that we should construe the statute in favor of the innocence of one who, as the appellant here, acquired his liquors in good faith, lawfully, and was keeping the same, not for an unlawful purpose, but for his own use under the

statute, which, at § 4 provides, "That it shall not be un-
lawful for a person to give away intoxicating liquor, to be
drunk on the premises, to a guest in his private dwelling or
apartment, which is not a place of public resort."

The prosecuting attorney argues that § 22 should be
construed to mean exactly what it says, and that if § 23
following § 22 establishes a rule of evidence, then there is
no purpose in § 22, because § 4 makes it unlawful for any
person to keep any intoxicating liquor with intent to sell
the same. While there is some force in this contention, § 4,
it seems to us, is a general section, making it unlawful for
any person to manufacture, sell, barter, exchange, give
away, furnish or otherwise dispose of any intoxicating liquor,
or to keep any intoxicating liquor with *intent* to sell, barter,
exchange, give away, furnish or otherwise dispose of the
same, except as otherwise provided; while § 22 makes it
unlawful for any person to have in his possession more than
one-half gallon or two quarts of intoxicating liquor other
than beer, or more than twelve quarts or twenty-four pints
of beer. Section 23, following, provides the rule of evidence
in such cases, different from the rule which ordinarily pre-
vails, and without that section it would be incumbent upon
the state to prove that the possessor *intended* the liquor for
purposes of unlawful sale or disposition.

In the case of *State v. McIntyre*, 139 N. C. 599, 52 S. E.
63, the supreme court of North Carolina, in construing a
section of a statute in force in that state substantially the
same as §§ 22 and 23, said:

"The correct interpretation being that the legislature only
intended to give the possession of more than two gallons of
whiskey evidential force on the charge of illegal sale, and did
not intend to create a distinct and substantive offense. We
are confirmed in this conclusion by the consideration that
there is grave doubt if it is in the power of the legislature to
make the mere ownership or possession of a given amount
of whiskey in itself a crime. The right to own property is
ordinarily one of the rights regarded as fundamental, which

may not be forbidden, forfeited, or interfered with by legislation, except in the assertion of eminent domain or in the exercise of the police power.   Only in the rarest instances can the police power be called on to regulate or control the conduct of individuals in the privacy of their own homes, or when not involving any relationship to others or the public."

It is true the statute there under consideration contained the two sections in one, while in the act under consideration in this state the two sections are separate.   But it is plain, we think, that they refer to the same subject, and that § 23 establishes merely a rule of evidence in prosecutions under § 22.

The case of *In re Crane*, 27 Idaho 671, 151 Pac. 1006, is relied upon by the prosecution.   That case arose upon a statute which prohibited the use and possession of liquor in certain territory.   The use of liquor and the possession of it were both prohibited by the statute under consideration in that case, and we think that neither the reasoning nor the conclusion apply to the act in this state, because the use of liquor in this state is not prohibited, and neither is the possession of it prohibited when lawfully acquired.   Under the admitted facts in this case, the possession of the liquor was lawfully acquired.   It was lawfully held prior to the taking effect of this act.   This act, by its terms, or by reasonable construction, cannot be held to make the mere possession unlawful, except such possession was unlawfully acquired. We are therefore satisfied that the trial court erred in overruling the demurrer.   The demurrer should have been sustained.

The judgment is therefore reversed, and the action ordered dismissed.

MORRIS, C. J., BAUSMAN, ELLIS, CHADWICK, MAIN, HOLCOMB, and PARKER, JJ., concur.

FULLERTON, J. (dissenting)—Initiative measure No. 3 prescribes in plain, unambiguous and mandatory terms that,

with certain specially enumerated exceptions, "It shall be unlawful for any person to have in his possession more than one-half gallon or two quarts of intoxicating liquor other than beer, or more than twelve quarts or twenty-four pints of beer." In the foregoing opinion the majority hold that this provision of the statute, notwithstanding its mandatory language, does not prohibit a person, whether of the excepted class or not, from having in his possession liquor or beer in excess of the designated quantity, provided the liquor or beer was acquired lawfully, either before or after the passage of the statute, and is not held or kept for the purposes of unlawful sale or distribution. With this conclusion I cannot agree.

As I understand the opinion, the grounds on which the conclusion is rested are these: first, that to give effect to this particular section of the statute as written would be contrary to the intent and purpose of the statute taken as a whole; and second, that certain later sections of the statute which "provide a rule of evidence" are in conflict with the literal terms of this section, and to give effect to them require an interpretation of this section contrary to its literal reading. Perhaps, also, there is a third reason, although it is not specially dwelt upon, namely, that to give the provision effect according to its literal reading would contravene the fundamental rights of the individual.

In arguing in favor of the first proposition, the majority review the several provisions of the statute and conclude therefrom that, "It is perfectly plain that this act was passed for the purpose of preventing the sale of or barter in intoxicating liquors within the state"; and that, "The whole purpose of the act, as disclosed by the act itself, is to prevent the barter and sale of intoxicating liquors within the state." For the purposes of the present inquiry this may be conceded to be a correct interpretation of the statute, although I think, since the very quotations made from it by the majority show that the barter and sale of intoxicating

liquors in the state is neither prohibited nor "prevented," but is only restricted, one might with some assurance express a doubt as to its correctness. But conceding this to be the whole or sole purpose of the statute, I cannot see how it in any way leads to the conclusion deduced therefrom. In my mind, to limit the quantity of intoxicating liquor any single individual may have in possession at any one time is in no way incongruous with the idea of preventing the barter and sale of such liquor. On the contrary, its seems to me that such a limitation promotes rather than retards that purpose. For, surely, one whose right of possession is of a limited quantity of liquor is less likely to engage in its illicit barter and sale than would be his likelihood were his right of possession unlimited.

The second reason given violates one of the most ordinary rules of statutory construction. It is the rule undoubtedly that a mandatory provision in one section of a statute is superseded by a conflicting mandatory provision in a later section of the same statute, but the rule has no application to subsequent sections of the same statute which merely provide "a rule of evidence" which relate only to trials had in the enforcement of the mandatory provision. The rules of evidence are enacted to aid in the enforcement of the mandatory provision, not for the purpose of destroying it, and when the two conflict the rules give way, not the mandatory provision. In the construction given the statute by the majority they have reversed the principle by allowing the "rule of evidence," intended to carry the mandatory provision into effect, to control the mandatory provision.

Again, I think the provisions of § 28, cited by the majority to sustain their conclusion, is directly contrary to the conclusion reached. By this section it is provided that every person except a registered druggist or pharmacist shall remove or cause to be removed from the state all intoxicating liquors in his possession within ten days after the statute becomes operative; excepting from the requirement only al-

cohol kept for chemical or manufacturing purposes, and the
one-half gallon of intoxicating liquor other than beer, or
twelve quarts or twenty-four pints of beer held by an in-
dividual. If it was the intent to permit an individual to
have in possession liquor in excess of the designated quan-
tity, I can see no purpose in this requirement, or purpose in
the exception to the requirement. Seemingly, if it was not
the intention to make the having in possession of an excess
quantity of liquor unlawful it was nonsense to require it to
be shipped away. It has been suggested, I know, that this
was intended to grant a privilege only—to enable persons
having an excess quantity to reduce it down to the restricted
quantity so as to be freed from the burden of accounting
for the excess. But if this were the purpose I think some
other form of words would have been used to express the
idea. At any rate, positive mandatory language is not
usually used for that purpose.

The majority further say that neither this section nor the
section especially under consideration has any application to
liquor "lawfully acquired." But to this it is a sufficient an-
swer to say that the statute does not itself make the distinc-
tion. It applies in terms to all liquor, no matter how or when
acquired, and to read the exception into the statute is to
legislate, not to construe. More than this, the conclusion
carries with it the idea that there was in the possession of
individuals, at the time the statute became operative, liquors
unlawfully acquired. To this it is sufficient to say there is
nothing in the present record which would justify the con-
clusion, and that I am not aware that the fact was of such
notoriety as to enable the court to notice it judicially.

The third reason assigned is of some moment, and is
worthy of a more extended consideration than the majority
gave to it. Nevertheless I cannot think it sound. It is
among the undoubted powers of legislation to regulate, re-
strict or prohibit traffic in, or even the use of, intoxicating
liquors, and I see no reason why this power does not extend

to limiting the quantity a single individual may have in possession at any one time.

In the foregoing I have given only an outline of my reasons for dissenting from the conclusion of the majority. I should not have done as much as this but for the far-reaching effect of the decision. It is going to make convictions of violators of the law all but impossible, and it renders inoperative the so-called permit section of the statute, the section which limits the quantity of liquor or beer that an individual is permitted to ship into the state at any one time. This because of the provision of the Federal statute known as the Webb-Kenyon Act, the statute which authorizes the interference by states with interstate commerce in intoxicating liquors. By the terms of that act, such shipments can only be prohibited when the person making the shipment intends that they shall be possessed, sold or used in violation of the law of the state wherein they are received. Since the majority hold that possession in excess of the restricted quantity is not unlawful, it follows that to refuse to permit shipments in excess of the restricted quantity is an unlawful interference with interstate commerce. This is not my individual view. It has been expressly so held by the controlling authority on the question. See, *Adams Express Co. v. Kentucky*, 238 U. S. 190, Ann. Cas. 1915 D. 1167.

In my opinion, the judgment appealed from should be affirmed.

## ON PETITION FOR REHEARING.
### [*En Banc*.   August 19, 1916.]

MORRIS, C. J.—A petition for rehearing has been filed herein in which the prosecuting attorney of King county, joined in by the prosecuting attorneys of fifteen other counties, ask the court to clarify the situation as to the effect of the opinion upon liquors obtained subsequent to January 1, 1916, either by granting a rehearing or by supplemental opinion.

It is evident from the public comment upon this decision that it has been greatly misinterpreted and misunderstood. The prominent idea in the petition seems to be that the opinion may be construed as destroying the force of Laws 1915, p. 14, § 22 (Rem. 1915 Code, § 6262-22), providing that it shall be unlawful for any person to have in his possession more than one-half gallon of intoxicating liquor, or more than twelve quarts or twenty-four pints of beer. The petition is frank in stating that a reading of the opinion would seem to indicate that the court is speaking only of liquor lawfully obtained prior to January 1, 1916, and held for lawful use. The petition says, "Certain portions of the opinion show that this idea was predominant in the court's mind" and "we believe that the court intended to go no further than to hold that § 22 does not make unlawful possession of liquor acquired before January 1st . . ."

If the prosecuting attorneys can easily gather the "predominant" idea of the opinion and the class of liquors the court had in mind, it ought not to be necessary to add to what has been said, and we would not do so except for the great public interest involved in the proper construction of this law and the manifest error into which the public has fallen in its understanding of our first opinion. The petition correctly reviews the opinion in saying the "predominant" idea written into it is the construction of the act only as to liquors lawfully acquired in this state prior to January 1st and held for personal use. That was the only question before the court, and none other was intended to be, or could be, passed upon. The information charged that Eden obtained his liquors prior to January 1, and held them for personal use, and not for the purpose of selling or disposing of them. In other words, the information set forth a lawful possession and a permitted use. Under such a charge, no question of the construction of § 22 was involved, other than to hold that it applied only to liquors acquired subsequent to January 1st, and hence, was inoperative as against liquors

acquired prior to that date. Such a construction, the prose-
cutors say, would not be "a blow to a rigid enforcement of
the law." We agree with such statement, and we find noth-
ing in the opinion, when read in connection with the agreed
facts, which in any way militates against such a view.

It is unfortunate that opinions in cases of this character,
involving the enforcement of a law in which the people of
the state have taken such interest, should be construed other
than by reference to the facts before the court and the plain
intendment of the law as to those facts. When properly read
in the light of the admitted facts and the language of the
act, the former opinion cannot offend against the most rigid
enforcement of the terms of the act. All the provisions of
the law are preserved and offenders are still subject to prose-
cution to the same extent and for the same causes now as at
any other time since the law became effective.

The only question involved in Eden's case, subsequent to
the time this law went into effect, was his intent to make per-
sonal use of his liquor, either by personal consumption or by
gifts to guests in his own home. The law not only fails to
make such a use a violation of its terms, but by exact lan-
guage permits it. How, then, if he obtained his liquors law-
fully and intended to put them only to a permitted use, could
his act in any sense be termed a violation of the law? We
again reiterate what the prosecuting attorneys are pleased
to refer to as the "predominant" idea in the former opinion,
that the possession of liquors lawfully obtained prior to
January 1st, and held only for personal use, is not a vio-
lation of the law, and no language of the former opinion can
be construed as destroying the vital force of § 22, or of other
sections relating to the quantity of liquor lawfully obtainable
subsequent to that date. As said in *State v. Martin, post*
p. 366, 159 Pac. 88, liquors obtained prior to January 1st
do not offend against the law when retained only for a per-
sonal or permitted use, but do so offend when retained for a
commercial use.

These observations as to the purpose and effect of our original opinion will, we think, make our construction of the law so plain as to the question involved that no necessity now arises for a rehearing, and the same is denied.

MOUNT, ELLIS, PARKER, MAIN, CHADWICK, HOLCOMB, and BAUSMAN, JJ., concur.

FULLERTON, J. (dissenting)—I think the ruling announced in the first opinion wrong even as limited in the foregoing. I therefore think the petition for rehearing should be granted.