[Crim. No. 907.   Fourth Dist.   Sept. 28, 1951.]

THE PEOPLE, Respondent, v. CLAUDE OVIEDO, Appellant.

J. David Hennigan, Public Defender, for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—Defendant and appellant was charged with and convicted by the court of violating section 11170.5, Health and Safety Code, in that he did wilfully and unlawfully, in connection with the prescribing and furnishing of a narcotic, give a false name and false address. Probation was granted. Defendant appealed. ·

The agreed facts appear in a portion of the preliminary hearing and the facts stipulated to at the trial. They are that defendant's true name is Claude Oviedo; that he has lived at 401 South Berkeley Street, San Bernardino, for the past six or eight years; that sometime in 1949, he was told by certain persons that he could see a Dr. Reid, at Perris, state that he had a headache, and that by doing so he could obtain some narcotic, "dilaudid"; that "some of these fellows" gave him some of these narcotic tablets; that he melted them and injected some of the substance in his arm with a hypodermic needle; that on June 30, 1950, he went to see Dr. Reid for the express purpose of obtaining these narcotics; that defendant informed the doctor that his name was Frank Queyer and that he lived at the Santa Fe Section House, Romoland, California; that the defendant complained of certain physical pains in his head that justified the doctor in issuing to him a prescription for a quantity of dilaudid narcotic tablets; that the doctor furnished such a prescription; that the defendant appeared at the pharmacy, turned over the prescription to the pharmacist, and obtained the quantity of dilaudid narcotic tablets called for in the prescription; that the name "Frank Queyer" was a false name in that the defendant had never been known by that name, and that the address given was a false address and that the defendant had never lived at that address nor ever used it as a mailing address. It was then stipulated that when the defendant procured the prescription from the doctor, the doctor would have given the defendant the same prescription if the defendant had given his true and correct name, and his true and correct address. From a reading of the transcript it appears that defendant had previously obtained one or two similar prescriptions under false names; that when he went there on this occasion he went there for the express purpose of obtaining these narcotics;

and that he used them by melting them and injecting them into his arm.

The only questions raised on this appeal, as we construe it, are (1) that the legislative history, pertaining to this particular law, impels the conclusion that the section does not apply to persons who receive a prescription for narcotics; (2) that the section is a penal statute and it should be strictly construed; and (3) that to apply the section to defendant would lead to absurd results and therefore it should be construed to exclude the defendant.

Counsel for defendant sets out the origin of sections 11170 and 11170.5 as being Statutes 1937, page 1950, chapter 687, section 1, and concedes that the section, as then written, would be applicable to the defendant in that it prescribes that "No person shall, in connection with the prescribing, . . . or dispensing of any narcotic drug . . . give a false name or address or make any false statement *to any person authorized by law to prescribe, . . . or dispense any such drug.*" (Italics ours.) The argument is that by the enactment of section 11170.5, i.e., "No person shall, in connection with the prescribing, . . . or dispensing of a narcotic, give a false name or false address," the Legislature changed the words of a perfectly understandable section of law creating a prohibition against the use of a false name when applied to those who *deal with physicians*, etc., and by omitting the emphasized phrase the prohibition was directed only to those persons who, "in connection with the prescribing, . . . or dispensing of any narcotic, give a false name or false address"; that under the facts shown the defendant was not doing the prescribing and accordingly his acts cannot be said to have been done "in connection with" the prescribing or furnishing of such a narcotic. This contention appears to us to be supertechnical. Section 11170.5 clearly falls within the category of statutes which leave no room for judicial interpretation. It is apparent from the provisions of the Health and Safety Code, chapter 3, division 10, that a prescription must involve two persons, the person authorized to prescribe and the person who may receive the prescription. On its face that section provides that any person connected with the prescription, whether the person receiving the narcotic or the person writing the prescription, cannot give a false name or address without violating the section. It does not eliminate the receiver as the offender. No other conclusion is possible from the all-

inclusive language which now appears in the section after the restrictive language was removed by the Legislature.

The next argument is that since this section is a penal statute, under the common law, it must be strictly construed, citing *United States* v. *Resnick,* 299 U. S. 207 [57 S.Ct. 126, 81 L.Ed. 127]. Defendant concedes that section 4 of the Penal Code abolished the common-law rule of strict construction of penal statutes, but contends that the section only applies to the criminal statutes found in the Penal Code. The courts have rejected any such a distinction. (*In re Mitchell,* 1 Cal.App. 396, 398 [82 P. 347]; *In re Galivan,* 162 Cal. 331 [122 P. 961].)

Lastly, in connection with the contention that absurd results would follow if the statute were strictly construed to include defendant, he cites *United States* v. *Katz,* 271 U.S. 354 [46 S.Ct. 513, 70 L.Ed. 986], and argues that the giving of a false name by the patient was of no causative effect whatever on the prescribing or in the distribution of narcotics since the evidence shows that the doctor would have prescribed the drug as readily if the true name had been given. The provisions of the Health and Safety Code set up a system of recordation of prescriptions to eliminate, insofar as it is humanly possible, the use of such narcotic prescriptions for illegal purposes. If the patient is allowed to give a false name and address it would be impossible, through the system, to detect illegal activity. No absurd result is reached by an interpretation of the section which precludes a patient from giving a false name or address in connection with such narcotic prescriptions. That section makes certain conduct criminal and, in the instant case, the person's conduct falls clearly within the provisions of the section. It can scarcely be material that the defendant would have also received the narcotics if he had not committed the acts forbidden by the statute. It does not follow that, because a police measure may affect persons innocent of criminal intent, it thereby produces an absurd result. (*People* v. *O'Brien,* 96 Cal. 171, 179 [31 P. 45]; *People* v. *McClennegen,* 195 Cal. 445, 468 [234 P. 91].)

Order denying a new trial affirmed.

Mussell, J., concurred.