[No. 36197.   En Banc.   May 29, 1963.]

THE STATE OF WASHINGTON, *Appellant*, v. CHARLES AUGUSTA
LEE, *Respondent*.*

* Reported in 382 P. (2d) 491.

*Charles O. Carroll* and *Richard M. Foreman,* for appellant.

*Torbenson, Thatcher & Stevenson,* for respondent.

OTT, C. J.—March 3, 1961, Charles Augusta Lee informed Dr. H. R. Pyfer that he was in pain as a result of a recent injury to his left knee; that his name was Charles Allen, and that he resided at Issaquah, Washington. An examination of the knee did not disclose any injury; however, the doctor did find that it had been previously fused. To alleviate the alleged pain, the doctor prescribed percodan, a narcotic drug. Lee took the prescription to the pharmacy adjacent to the doctor's office, again represented that he was Charles Allen of Issaquah, and asked the pharmacist to request the doctor to prescribe a different drug because percodan made him ill. Dr. Pyfer then substituted the narcotic drug demerol. The prescription was filled, and Lee signed a charge slip as Charles Allen, Issaquah, Washington.

March 6, 1961, Lee returned to Dr. Pyfer's office and obtained a refill of the prescription. Upon this second office call, the doctor recognized him to be Charles Lee, and notified the police.

After Lee left the pharmacy with the demerol, he was arrested. Lee told the arresting officer that the reason he had used a false name and address was that " . . . he wanted the demerol and he knew that he couldn't get it by using his right name and address." He later made a similar statement to his probation officer.

Subsequently, Lee was charged with feloniously obtaining a narcotic drug, in violation of RCW 69.33.380(1)(d), which provides:

"(1) No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug  . . .  (d) *by the use of a false name or the giving of a false address.*" (Italics ours.)

The evidence at the jury trial was substantially as indicated above. In addition, Dr. Pyfer testified that, in prescribing the drug, he had relied upon the defendant's statement of alleged pain. He further stated that he would not have prescribed the drug had he known the defendant's

true name, because his records would have disclosed that Charles Lee had not paid his previous account.

At the close of the state's evidence, the defendant moved for dismissal, contending that the evidence was insufficient to prove that Dr. Pyfer had relied upon the false name and address given to him by the defendant. The court granted the motion, and the state appeals.

The appeal presents a single issue: Is reliance upon a false name and/or address by the doctor or pharmacist prescribing a drug or filling a prescription, an element of the offense proscribed by RCW 69.33.380(1)(d)?

The Uniform Narcotic Drug Act (Laws of 1959, chapter 27, p. 197, RCW 69.33) regulates the possession, use, and disposal of narcotic drugs, and provides for licensing those engaged in the sale thereof. It further provides that

" . . . The record of all narcotic drugs sold, administered, dispensed, or otherwise disposed of, shall show the date of selling, administering, or dispensing, *the name and address of the person to whom*, or for whose use . . . the drugs were sold, administered or dispensed, and the kind and quantity of drugs. Every such record shall be kept for a period of two years from the date of the transaction recorded. . . ." (Italics ours.) RCW 69.33.300(5).

Penalties are prescribed for violation of any of the provisions of the act. RCW 69.33.410.

The respondent contends that, if, under RCW 69.33.380 (1)(d), proof only of the giving of a false name and/or address in obtaining a narcotic drug is sufficient to establish the offense, persons innocent of any corrupt motive in using a false name and/or address would be guilty of crime, unless a causal relationship in the nature of reliance is a required element of the offense.

The issue raised is one of first impression in this state. It has been decided in other jurisdictions adversely to respondent's contention.

In *People v. Oviedo*, 106 Cal. App. (2d) 690, 235 P. (2d) 612 (1951), the defendant was charged with violation of a statute which provided that " 'No person shall, in connection with the prescribing, . . . or dispensing of any

narcotic drug . . . give a false name or address . . .' " The defendant contended that reliance was a necessary element of the offense. In this regard, the court stated (p. 693):

"Lastly, in connection with the contention that absurd results would follow if the statute were strictly construed to include defendant, he cites *United States v. Katz*, 271 U. S. 354 [46 S. Ct. 513, 70 L. Ed. 986], and argues that the giving of a false name by the patient was of no causative effect whatever on the prescribing or in the distribution of narcotics since the evidence shows that the doctor would have prescribed the drug as readily if the true name had been given. The provisions of the Health and Safety Code set up a system of recordation of prescriptions to eliminate, insofar as it is humanly possible, the use of such narcotic prescriptions for illegal purposes. If the patient is allowed to give a false name and address it would be impossible, through the system, to detect illegal activity. No absurd result is reached by an interpretation of the section which precludes a patient from giving a false name or address in connection with such narcotic prescriptions. That section makes certain conduct criminal and, in the instant case, the person's conduct falls clearly within the provisions of the section. It can scarcely be material that the defendant would have also received the narcotics if he had not committed the acts forbidden by the statute. It does not follow that, because a police measure may affect persons innocent of criminal intent, it thereby produces an absurd result. [Citing cases.]"

In *State v. Newstead*, 280 S. W. (2d) 6 (Mo. 1955), the defendant was charged under a statutory provision identical to that here in question. In commenting upon the sufficiency of the evidence to sustain the conviction, the court stated (p. 9):

"It is clear that the foregoing subsection makes it a separate offense 'to obtain a narcotic drug, * * * by the uses of a false name or the giving of a false address.' *While testimony adduced by the state may not have shown that the prescription was written or filled because of the false name or address given by defendant,* and it may be that certain of the state's evidence may be construed as tending to show the contrary, still, *in view of defendant's admission that he did in fact use a false name and address for the pur-*

*pose of obtaining a narcotic drug,* and in view of the further evidence that he did in fact obtain a narcotic drug under the false name and address admittedly given for the purpose of obtaining it, we are of the opinion that the evidence was sufficient to sustain the essential charge contained in the amended information." (Italics ours.)

In *Geurin v. Nevada,* 73 Nev. 233, 315 P. (2d) 965 (1957), the same issue was raised. The court stated (p. 235):

"Appellant further contends that it was not proved that his use of a false name 'was the motivating and causative basis' for the druggist's delivery of the narcotic to him and that it was, therefore, not proved that he obtained the drug 'by the use of a false name.' The contention would appear to be that it was necessary for the state to negative all other causes that might possibly have motivated the druggist in delivering the drug to appellant. It appears from the transcript that the druggist required appellant to sign for receipt of the drug, whereupon appellant signed the false name of Virgle Moore. We do not find the argument convincing."

Respondent contends that the cited cases are distinguishable. He urges that, in *People v. Oviedo, supra,* the statute was a prohibition against the *giving,* rather than the *use* of a false name. We find this distinction to be without merit.

Respondent further contends that, in *State v. Newstead, supra,* the defendant admitted that his purpose in using a false name and address was to obtain the drug. In the instant case, the evidence established that respondent also admitted that he used the false name and address because he knew he would not obtain the narcotic if he used his true name. We find no merit in this contention.

Respondent cites *State v. Powell,* 212 Ore. 684, 321 P. (2d) 333 (1958), and argues that this court should adopt the rationale of that case, which requires the element of reliance. The Oregon court, in the cited case, was interpreting two statutes, each of which provided a different penalty for the same offense, one a misdemeanor and the other a felony. The statute which denominated the offense a felony was identical to RCW 69.33.380 (1) (d). The court, in giving meaning to both acts of the legislature, determined that the legislature intended that the felony statute re-

quired an additional element of reliance on the false name and address by the person prescribing the drug, but that the misdemeanor statute did not. The case is not apropos for the reason that we are not concerned, in this appeal, with reconciling two statutes.

The state has broad police powers to regulate and control activities which are detrimental to the general health and welfare of the people. *State v. Boren,* 36 Wn. (2d) 522, 219 P. (2d) 566, 20 A.L.R. (2d) 798 (1950). Because of the extremely dangerous and injurious effect of the unregulated use of narcotic drugs, " . . . We are also committed to allow the maximum scope of police power in the control of the illegal use of narcotic drugs. . . . " *Seattle v. Ross,* 54 Wn. (2d) 655, 661, 344 P. (2d) 216 (1959).

The intention of the legislature, in the enactment of a regulatory measure, must be determined from a consideration of all of the provisions of the act. It is the duty of the court to adopt a construction of the statute that is reasonable, and in furtherance of the obvious and manifest purpose of the legislation. *State v. Rinkes,* 49 Wn. (2d) 664, 667, 306 P. (2d) 205 (1957), and case cited.

The legislative purpose, in enacting the Uniform Narcotic Drug Act, was to curb illegal traffic in narcotic drugs, and to regulate and control their sale and distribution. The section here in question, when read in conjunction with the recording provisions of the act, is directed at a particular aspect of this general purpose, namely, to prevent a person with a seemingly legitimate complaint from obtaining an oversupply of narcotic drugs by using a different name and address in any number of physicians' offices and/or pharmacies. To curtail such excessive use and the unlawful obtaining of narcotic drugs is well within the proper exercise of the police power of the state.

The respondent's statement that his purpose for using a false name and address was "that he couldn't get it by using his right name and address," brings the facts of this case precisely within the purview of the statute.

We conclude that, in enacting RCW 69.33.380(1)(d), the legislature did not intend that proof of reliance upon a false name and/or address by the doctor or pharmacist should be an element of the offense.

The judgment of dismissal is reversed.

HILL, FINLEY, HUNTER, and HALE, JJ., concur.

DONWORTH, J. (dissenting) — The majority have concluded that RCW 69.33.380(1)(d) merely augments RCW 69.33.300, relating to records to be kept in receiving and dispensing narcotics. Because of the reasons expressed in this opinion, I am compelled to reach a different conclusion.

RCW 69.33.380(1)(d) was enacted by our legislature when it adopted the Uniform Narcotic Drug Act recommended by the commissioners on uniform state laws. The Uniform Narcotic Drug Act, 9B U.L.A., pp. 275-332, is divided into several sections. Section 9 is entitled "Record to be Kept." Part of this section is quoted in the majority opinion and is found in RCW 69.33.300. Section 17 of the Uniform Narcotic Drug Act is entitled "Fraud or Deceit." This section is codified as RCW 69.33.380.

RCW 69.33.380(1) reads as follows:

"No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug, (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription or of any written order; or (c) by the concealment of a material fact; or (d) by the use of a false name or the giving of a false address."

The majority have isolated part (d) of subsection (1) from parts (a), (b) and (c), concluding that it is only a supplement to the recording provisions of RCW 69.33.300. Therefore, under the rationale of the majority, a violator is not to be punished for obtaining a narcotic drug by any surreptitious means, but rather the punishment is to be imposed for hindering a doctor or pharmacist in his record keeping.

In transposing this provision from the fraud and deceit section to that concerning record keeping, the majority

cite *People v. Oviedo*, 106 Cal. App. (2d) 690, 235 P. (2d) 612 (1951). The statute under consideration by the California court *was not* copied from the Uniform Narcotic Drug Act.

The majority conclude that the California statute is indistinguishable in effect from the one under consideration in the instant case, stating that

" . . . the statute was a prohibition against the *giving*, rather than the *use* of a false name. We find this distinction to be without merit."

In my opinion, the wrong portions of the two statutes have been emphasized.

The California statute provides:

" 'No person shall, in connection with the prescribing, . . . or dispensing of any narcotic drug . . . give a false name or address.' "

The prohibition is directly against giving a false name, in connection with prescribing or dispensing a narcotic drug.

RCW 69.33.380(1)(d) provides:

"No person shall obtain . . . a narcotic drug . . . by the use of a false name or the giving of a false address."

Here, the prohibition is directly against *obtaining* narcotic drugs in an illegal manner.

In each of the four subdivisions of RCW 69.33.380(1), the phrase *obtain by* introduces an illegal means of procuring narcotic drugs. Unless there is some causal connection between the activity enumerated in these subdivisions and the obtaining of a narcotic drug, the activity cannot be the means by which the drug is obtained.

The dismissal of the charge by the trial court was based upon the trial judge's conclusion that the state had failed to prove that the narcotics were "obtained by the use of a false name or the giving of a false address," in the sense that the false name or address was relied upon by the doctor and the pharmacist and could be said to have enabled respondent to obtain the narcotics. The issue (as framed by the briefs of both appellant and respondent) is whether reliance by the physician prescribing, or the phar-

macist dispensing, a narcotic drug, on the use of a false name or address given by respondent is a necessary element to be proved by the state in order to constitute a violation of RCW 69.33.380(1)(d). In other words, did the use of the false name and address cause respondent to obtain the narcotic drug?

At the trial on cross-examination of Dr. Pyfer by respondent's counsel, the following testimony was elicited:

"Now your diagnosis, then, and your ultimate prescription of this drug, was to curb whatever pain he did have? If he was to be believed, at least, it was for the pain? A. That is correct, from his history of pain from the injury, the recent injury of that morning. . . . Q. It is not true, Doctor, that you did not prescribe this demerol because Mr. Lee gave you a false name and address? That was not the reason you prescribed the drug, was it? A. No, it was not."

The deputy prosecutor, in presenting his case, did elicit from Dr. Pyfer testimony that the narcotic prescription would not have been given had he known respondent's true name. However, I think this testimony was adequately explained when Dr. Pyfer was called by defense counsel and testified as follows:

"Q. Dr. Pyfer, yesterday a question was given you by the prosecutor asking if you would have given the defendant Lee the Prescription if you had known his real name. Do you recall that question? A. Yes, I do. Q. My question to you at this time is: why would you not have given him the prescription had you known his real name? A. In his chart we have records of non-payment of bills, and for this reason I would not have taken care of him."

Clearly, this testimony could only mean that the doctor, if he had been informed as to the patient's true name, would not have rendered *any* further service for respondent because he still owed the doctor for services previously rendered.

*State v. Powell*, 212 Ore. 684, 321 P. (2d) 333 (1958), interpreted a statute which is identical to that under which respondent was charged. The Oregon court held that reliance on the false name or address is an element that must

be present in order to constitute a violation of the statute. The court said:

"The evidence in this case discloses that the doctor in prescribing the narcotic to the defendant on the 20th and 23rd of July put no reliance in the name or address of the defendant whatsoever but relied solely upon the defendant's representations of her physical condition and his own examination of her condition. When she returned on the 25th of July, the doctor did not refuse her a prescription because of her name or the address, but because he had already prescribed more than was proper or necessary in the treatment of her condition. In other words, the defendant as a person and not because of name or address received the very narcotics intended by the doctor. Thus the false name or address was immaterial."

The majority, in support of their position that no reliance is required, cite two cases also construing statutes indentical to the one before us. However, *Geurin v. Nevada*, 73 Nev. 233, 315 P. (2d) 965 (1957), only held that the false name and address need not be the *sole* motive and cause in the delivery of narcotics. *State v. Newstead*, 280 S. W. (2d) 6 (Mo. 1955), held that no causal connection was necessary when the defendant admitted the use of the false name for the purpose of obtaining a narcotic drug and actually obtained a narcotic drug. Whereas I agree that a defendant must intend to obtain a narcotic drug, I disagree with the *Newstead* case to the extent that it holds that no reliance on the false name by the person dispensing the narcotic drug is necessary.

The fact that both parties cite authority in support of their interpretation of this uniform statute indicates that there is a latent ambiguity in the statute. In such a situation, I cannot agree that a criminal statute can be properly construed in favor of appellant. As this court has had occasion to say in the past:

" . . . Laws are interpreted in favor of liberty, and if a statute is capable of two constructions, one of which makes a given act criminal and the other innocent, the statute will be given the construction which favors innocence." *State v. Anderson*, 61 Wash. 674, 676, 112 Pac. 931 (1911).

Accord: *State v. Hardwick*, 63 Wash. 35, 114 Pac. 873 (1911); *State ex rel. Dorrien v. Hazeltine*, 82 Wash. 81, 143 Pac. 436 (1914); *State v. Furth*, 82 Wash. 665, 144 Pac. 907 (1914); *Huntworth v. Tanner*, 87 Wash. 670, 152 Pac. 523 (1915); *State v. Eden*, 92 Wash. 1, 158 Pac. 967, 159 Pac. 700 (1916); *State v. Levy*, 8 Wn. (2d) 630, 113 P. (2d) 306 (1941).

In *State v. Levy, supra*, we said:

"Conceding, however, for the sake of argument, that the sections of the statute above referred to *might*, according to the interpretation placed upon them by the trial court, be applicable to the instant situation, the result would simply be that a question of statutory construction would be presented concerning which judicial minds might radically, yet reasonably, differ. In such event, we are faced with the principle, universally recognized, that, in a criminal case, reasonable doubts upon questions of law, as well as upon questions of fact, must be resolved in favor of the accused. . . ."

I would adopt the reasoning of the trial court that the statutory provision here in question requires reliance on a false name or address. The provision does not prohibit everyone from obtaining narcotics. It is designed to prevent those who are not justifiably entitled to receive narcotics from obtaining them by surreptitious means.

The trial judge gave this example of the type of situation which he considered that the particular subsection before us was intended to cover:

"Let us take an example. Let us assume that the doctor has in his files a history that one Charles Allen requires demerol, and he had previously given a prescription to Charles Allen for the demerol, and Charles Allen calls and wants that prescription refilled, and Charles Lee goes in and represents himself as Charles Allen and the prescription is filled by the physician. This is what I think the statute contemplates."

Under this interpretation of subsection (d), only those persons who actually obtain a narcotic drug by the means forbidden therein are violators. This interpretation is consistent with RCW 69.33.380(1), read in its entirety.

In the case at bar, Dr. Pyfer, when asked, would not testify that respondent requested a narcotic drug. He did say that he prescribed the drug because of his own examination of respondent and the latter's history of pain. There is no evidence to support a jury finding that Dr. Pyfer in any way relied upon the false name and address in prescribing the drug.

In my opinion, the state failed to prove an essential element of the crime charged in this case, to wit, reliance upon a false name or address. Without such reliance, the false name and address were immaterial. It was not the means by which the drug was obtained.

I would affirm the trial court's order of dismissal.

WEAVER, ROSELLINI, and HAMILTON, JJ., concur with DONWORTH, J.

* Reported in 382 P. (2d) 264.