[No. 13430. Department Two. July 29, 1916.]

THE STATE OF WASHINGTON, *Appellant*, v. FRED MARTIN, *Respondent*.[1]

INTOXICATING LIQUORS—PROHIBITION — POSSESSION — DRUGGISTS — STATUTES. Rem. 1915 Code, § 6262-1 *et seq.*, regulating the sale of intoxicating liquors by druggists, refers only to druggists or pharmacists actively engaged in business; hence possession of an excess quantity by a registered pharmacist not engaged in business either when the liquors were acquired or seized, is an unlawful possession and not justified by the fact of acquisition before the law went into effect nor by intent to engage in the business.

SAME—POSSESSION — INTENDED USE — STATUTES. Where a registered pharmacist not engaged in business acquired a stock of intoxicating liquors before the prohibition law went into effect, and admitted that he kept them for a future druggist's business, instead of shipping them out of the state within ten days as required by law, the liquor is contraband and subject to condemnation in a proceeding *in rem*, and the owner cannot recant and reclaim the liquor to be kept for personal use in his home, the intent being an important element of the offense.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered March 6, 1916, ordering the return of intoxicating liquors seized, after a hearing before the court. Reversed.

*Earl W. Benson* and *E. F. Barker*, for appellant.

*Sharpstein, Pedigo, Smith & Sharpstein*, for respondent.

BAUSMAN, J.—Proceeding under the initiated act (Laws 1915, p. 2; Rem. 1915 Code, § 6262-1 *et seq.*) relating to intoxicating liquors, the sheriff found and seized an excess quantity upon the premises of one Martin who, in answer to the return, alleged himself lawfully entitled to keep them as a registered pharmacist. Upon a hearing the lower court ordered them returned to him.

It appeared that Martin had bought the liquor before the statute went into effect, but that, though registered as a

[1]Reported in 159 Pac. 88.

druggist or pharmacist, he was neither then nor since actually engaged in that business. Asserting a right to keep the liquors with an avowed intent to put them into that business at his convenience, he invokes arguments lately discussed in *State v. Eden, ante* p. 1, 158 Pac. 967, 159 Pac. 700.

Under this law, on the hour of a certain day, we were to start anew as to alcoholic liquors, all persons being commanded to rid themselves of stocks within the next ten days. New supplies after the initial date were to be had only through public officers. All traffic and public drinking being forbidden, druggists remained the sole public dispensers, nor could these resupply themselves except through public agencies. As to previous stocks of dealers, the law was sweeping; they must be sold at once, with a sole exception allowed to druggists. In a word, after a given date all prior stocks were offenders under the law unless they could justify themselves as druggists or come, as individuals, within the *Eden* decision.

There we held that a householder, though there be found on his premises after the act went into effect more than the statutory allowance, is lawfully entitled to keep what he had purchased before when there is not merely a buying before but a keeping afterwards for purely private drinking. Martin, however, announces his keeping them not for private use but for future traffic, so a very different question is presented. It is argued that, being a private individual who, before the act, lawfully acquired liquors, what he wants them for now is immaterial if he be not applying them to an unlawful use. Then the argument goes a step further. It contends or implies that he will have a right hereafter to transfer them, not indeed to a third person, but to himself as future druggist.

Two questions accordingly appear; first, whether Martin can, so to speak, put these goods into traffic through himself as future druggist, and secondly, whether, if that be for-

bidden, he may not at least retain them or, more accurately, reclaim them from seizure.

By the *Eden* decision, the burden of proof in these situations has not been changed, so whenever an excess quantity is found in any hands or place, it is presumptively an unlawful excess. The law was an anti-traffic law with reduced domestic drinking aimed at through the cutting down of the quantity that might be subsequently stored at home as a consequence of a reduced storing or accumulation at home. As to home consumption, the right of householders was merely curtailed, the law being in their way only as to new quantities that might be kept on hand and the manner of getting fresh supply. What Eden claimed was the right to consume what he had bought before the enactment, proposing no change in the use of his liquors, towards which his intent after the law was the same as his intent before.

With Martin it is obviously different. To begin with, he was not a druggist within the meaning of this act, either when he bought the liquors or when they were seized. To be sure, he was registered as such, but the act is plain in too many places that "druggist" or "pharmacist" means one actively engaged in the business, this last idea being so frequently expressed in actual words as an appendage to the technical term that, when occasionally not appended, they are plainly omitted for brevity alone. Not a line in the statute indicates that pharmacists merely registered were to have rights like those engaged in business.

Thus we are clear that Martin is not a druggist and that, when he proposes to change these liquors to that use, he will be transferring them to a new owner under this law as much as if he were selling them to another person. The law is as much concerned with the change of status or object in this commodity as in the change of owner.

Now, Martin's position is no better than that of any other person who, having for domestic purposes acquired liquor for his home previously to the law, changes his mind later,

applies for a pharmacist's license, and launches himself in that occupation. Such a person, even though he may have had the intention when he bought the liquor in advance of the law, changes his actual employment as well as the actual use after it without complying with the new forms for publicity, producing one of the evils that the law had in mind when it required that holders of existing stocks promptly dispose of them. This conclusion we come to without adding the fact that Martin was a saloon-keeper previously to the law, keeping up a druggist's license to be used, if he felt like it, afterwards, and consequently one of the very traffickers to be extinguished. As for the *Eden* decision, that rests on the principle that the right to home consumption remained continuous; that the property acquired for that purpose before the act was not intended to be disturbed, and that no new offense was given later by the owner's continuing to consume his old supply at home.

Though Martin, then, may not transfer these liquors to a druggist's use, may he at least reclaim them from the sheriff now, recanting his answer by saying that he will keep them merely to be drunk at home?

Not to be forgotten for a moment is the *in rem* aspect of our law. A commodity, though its owner be never found, may be itself an offender. Found in excessive quantities after the statute goes into effect, it is presumptively contraband, an inanimate violator of law subject to condemnation. Not until somebody wishes to claim it is its ownership a matter of concern, whereupon the law may let the owner alone and be satisfied with condemnation. The objects, therefore, for which liquors are held or accumulated do become material. The lawful status may be changed to an unlawful status in the same hands. Suppose an individual to have a lawful quantity and yet be selling it at retail. The fact that it was lawfully acquired either before or after the statute would not save the unsold portion from forfeiture. The same would be true if, though no part of it were yet disposed of, the

owner be found in full preparation for unlawful sales. The authorities would not have to await the traffic and the crime. In short, the intended use is a most important element in the commodity under this law, which condemns the commodity even when "kept or possessed by any person *with the intent* of violating any of the provisions of this law."

To conclude, when Martin admitted his keeping this stock for a druggist's future business instead of to remove it from the state in the required ten days, this stock was made an offender open to seizure. Judgment reversed.

MORRIS, C. J., MAIN, HOLCOMB, and PARKER, JJ., concur.