[No. 12000.   Department Two.   March 10, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v.
FRANK I. SEFRIT, *Appellant*.[1]

CONTEMPT—NEWSPAPER COMMENT—PENDENCY OF COURT PROCEED-
INGS—NECESSITY.   Where the fish commissioner, cited to appear and
testify before the grand jury, for his own protection secured an order
of court directing him to appear and testify or show cause why he
should not be punished for contempt, to which order he assented,
the matter of his giving testimony was fully adjudicated and de-
termined, and no controversy was pending; hence subsequent news-
paper comment thereon, prior to the giving of the testimony, which
would have been contumacious if an action had been pending at the
time of the publication, is not contempt of court.

SAME — PREJUDICE TO PARTY — REASONABLE DOUBT.   Constructive
contempt by newspaper comment on judicial proceedings requires
that the matter must have a reasonable tendency to prejudice a
party to a pending action, or substantially interfere with the admin-
istration of justice; and being *quasi* criminal, every reasonable
doubt must be resolved in favor of the accused.

Appeal from a judgment of the superior court for What-
com county, Hardin, J., entered January 19, 1914, upon a
trial and conviction of contempt.   Reversed.

*Newman & Kindall* and *John C. Higgins* (*Hyman Zettler*,
of counsel), for appellant.

*Frank W. Bixby*, for respondent.

MAIN, J.—This is a contempt proceeding which grew out
of the following facts:   On or about November 17, 1913, a
grand jury was impaneled by the superior court for What-
com county, Washington.   This grand jury remained in
session until a time subsequent to the happenings out of
which this proceeding arose.   On the 26th day of November,
1913, a subpoena *duces tecum*, directed to L. H. Darwin,
state fish commissioner, was issued.   This subpoena directed
the fish commissioner to appear before the grand jury on

[1]Reported in 146 Pac. 864.

the 4th day of December, 1913, and there testify; and also directed him to produce as evidence the books and records of his office relative to certain matters mentioned in the subpoena. The subpoena was served upon the fish commissioner on November 26, 1913. Thereupon the fish commissioner sought the advice of the *Attorney General* as to whether or not he had a right to testify and divulge the information called for without incurring the penalty provided for in Rem. & Bal. Code, § 5225 (P. C. 191 § 101). This section of the statute provides, that all reports showing the status of the business of any person required under the provisions of the act, to be made to the fish commissioner, shall by that officer be treated as confidential, and shall not be published "unless their publication shall be necessary in some civil or criminal proceeding." For a violation of this section the commissioner is subject to be punished by a fine not exceeding $1,000. In response to the inquiry, the *Attorney General* advised the fish commissioner as follows:

"We are of the opinion that your own rights in the matter would be amply protected by calling the attention of the grand jury to section 5225, Rem. & Bal. Code, and stating to them that you feel it your duty to claim the privilege of refusing to divulge the matters required of you unless the court should order you so to do."

On December 4, 1913, the fish commissioner appeared before the grand jury in response to the subpoena which had been served upon him, and there exhibited the letter which he had received from the *Attorney General*. He stated, in response to a question, that he was perfectly willing to testify should the court so order, and that all he cared for the order of the court was to protect himself against the $1,000 penalty imposed by statute. It appears that thereupon the fish commissioner was excused until the court order which he referred to could be secured. During the afternoon of this day, the prosecuting attorney, by affidavit, submitted the facts to the Honorable Ed. E. Hardin, one of the judges

of the superior court for Whatcom county.  Judge Hardin
signed and caused to be entered an order which directed the
fish commissioner to appear before the grand jury forthwith,
or as soon thereafter as required by the grand jury, and
there submit himself as state fish commissioner for interro-
gation, and the books and records of his office for inspection,
or failing so to do, to appear before the court at 9:30 o'clock
on the morning of December 5, the day following, and there
show cause why he should not be punished for contempt for
failing to obey the order of the court.  The order recited
that L. H. Darwin was present and expressed a willingness to
abide by the order of the court whatever that might be, and
that he made no other defense than the section of the statute
referred to in the affidavit of the prosecuting attorney (Rem.
& Bal. Code, § 5225; P. C. 191 § 101).  After the order had
been entered, the prosecuting attorney advised the fish com-
missioner that his presence was desired before the grand jury
at 9 o'clock the following morning, viz., December 5, 1913.
At that time the fish commissioner appeared and remained in
attendance until some time during the forenoon of that day,
when he was called before the grand jury, where his testimony
was given.

On the morning of December 5, and before the time fixed
for the fish commissioner to appear before the grand jury
on that day, there was published in the American-Reveille, a
daily newspaper, of which the defendant is editor in chief
and manager, an editorial which contained some comment
upon the proceedings wherein the fish commissioner was di-
rected to testify before the grand jury, or show cause why
he should not be punished for contempt for failing so to do.
The publication of this editorial was, by the trial judge, con-
ceived to be contempt of court.  On December 6, 1913, by
order of Judge Hardin, this contempt proceeding was insti-
tuted by the filing of an affidavit by the prosecuting attorney.
The defendant was cited to appear and show cause why he
should not be punished for contempt of court in publishing

the editorial referred to.   On January 19, 1914, the court entered an order in which the defendant was adjudged to be guilty of contempt of court, and directing that he "be punished therefor by being committed to the county jail for the space of ten days," and that the costs of the proceeding be charged against him.   From this judgment, the appeal is prosecuted.

The controlling question is, whether the editorial referred to was a comment upon a proceeding then pending in court. It will be assumed, for the purposes of this opinion, that the editorial was contumacious, if at the time of its publication an action was pending in court upon which there was comment.   If no proceeding were pending, it will hardly be contended that the article published constituted a contempt.   If a proceeding were pending, it was the one relative to the order directing the fish commissioner to appear before the grand jury and testify, and submit his books for examination, or show cause why he should not be punished for contempt.   The question then is, whether the action was pending when the publication took place.   The only purpose of the proceeding was to secure an order of the court and thereby exonerate the fish commissioner from liability under the statute on account of disclosing confidential information.   The fish commissioner was at no time unwilling to testify.   When first called before the grand jury he declared his willingness to testify.   To others he expressed the same attitude.   It is true that, upon the trial, he testified that, if any one interested in the fish business had appeared and desired to contest the granting of the order on the morning of December 5, he would have permitted him to do so.   The order, however, recited, that, on the previous day when it was entered, the fish commissioner was present and consented thereto.   Upon the trial he testified that he was not present when the affidavit was presented to the court and the order made.   The order was secured at his instance and for his special protection.   The

order as entered did not direct the fish commissioner to appear and give his testimony, or show cause why he should not so testify, but directed him to appear and testify, or show cause why he should not be punished for contempt for failing to obey the order of the court. So far as his appearing to testify was concerned, the matter was finally adjudicated and determined.

Some point is made of the fact that the fish commissioner upon the trial testified that, if any one interested in the fish business had appeared on the morning of December 5 before he was called before the grand jury, and desired to contest the order, he would have permitted him to do so. It is difficult to see how, even if such person had appeared, that a substantial contest could have been waged, either by the fish commissioner, or any one on his behalf, over an order which was secured at his special instance and request, and which recited that he was present when it was entered, and that he consented thereto.

When the article complained of was published, there was no substantial pending litigation. There was no party to a proceeding which the article would have a reasonable tendency to cause to be substantially prejudiced in the conduct of a cause. Neither can the article be said to substantially interfere with the due administration of justice, there being then no pending litigation.

In the recent case of *State ex rel. Dorrien v. Hazeltine*, 82 Wash. 81, 143 Pac. 436, the defendant was charged with contempt by reason of the fact that he published, or caused to be published, an article in his newspaper which was claimed to be comment upon a proceeding then pending in court. The doctrine was there announced that the matter charged must have a reasonable tendency to cause substantial prejudice to a party in the conduct of an action, or to substantially interfere with the due administration of justice. The essence of the offense is conduct reasonably calculated

to create an atmosphere of prejudice where a pending case is
to be tried. It was there said:

"The essence of the offense is conduct reasonably calculated
to produce an atmosphere of prejudice where a pending case
is to be tried. *King v. Tibbits*, 2 British Ruling Cases 469.
But the better view is that one will not be punished for a
technical contempt. The matter charged must have a rea-
sonable tendency to cause substantial prejudice to a party
in the conduct of the action, or to substantially interfere
with the due administration of justice. *Hunt v. Clarke*, 58
L. J. (Q. B.) 490. The basis of this rule is that a pro-
ceeding for constructive contempt is *quasi* criminal, and every
reasonable doubt will be resolved in favor of the accused.
*Hutton v. Superior Court etc. of San Francisco, supra.* [147
Cal. 156]."

Under the doctrine of that case, the present action cannot
be maintained. In support of the contention that an action
was pending when the editorial was published, the case of
*State v. Tugwell*, 19 Wash. 238, 52 Pac. 1056, 43 L. R. A.
717, is cited. In that case, an opinion by this court was filed
on February 18, 1898. On February 24, the defendant
caused to be published a contumacious article. On February
28, a petition for modification of the opinion of the court was
filed. Thereafter, and on March 2, 1898, an opinion of the
court was filed denying the petition for modification. It was
there held that, since the publication occurred during the
time in which a litigant had a right to file a petition for re-
hearing, an action was pending in court. But that case does
not reach the facts in the present case. Here, as already
stated, when the publication took place, there was no sub-
stantial litigation pending. The order was desired and se-
cured for a special purpose, that of protecting the fish com-
missioner from liability under the statute. This purpose had
been accomplished. Further controversy over the matter was
hardly within the range of possibility, if, indeed, it can be
said that there was any pending controversy at any stage
of the proceeding.

Other questions are discussed in the briefs; but these become immaterial in view of what has been said upon the primary question.

The judgment will be reversed, and the cause remanded with direction to dismiss the proceeding.

FULLERTON, MOUNT, CROW, and ELLIS, JJ., concur.