

**FILED**
**APRIL 6, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 37163-8-III |
| | ) | |
| NANCY H. OLSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| GEORGE E. OLSON, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — George Eric Olson appeals CR 11 sanctions and a contempt

order issued during the pendency of his marital dissolution case. We reverse the CR 11

sanctions but affirm the contempt order.

## FACTS

In January 2019, Nancy Olson filed a petition to dissolve her 14 year marriage to

George Eric Olson. The petition generated an automatic temporary order "restrain[ing]

both parties] from transferring, removing, encumbering, concealing, damaging or in any

way disposing of any property except in the usual course of business or for the necessities of life or as agreed in writing by the parties." Clerk's Papers (CP) at 10.

At the time of separation, the Olsons were preparing to move into a house in Post Falls, Idaho. The Post Falls residence had been purchased with a portion of the proceeds from the sale of a prior residence in Greenacres, Washington. After the separation, Ms. Olson proceeded to move into the Post Falls home, while Mr. Olson rented a residence elsewhere.

A few months into the dissolution proceeding, Mr. Olson transferred $50,000 from a joint bank account he owned with Ms. Olson into a bank account opened solely in his name.

Around the same time as Mr. Olson's withdrawal, Ms. Olson withdrew approximately $25,000 from a joint bank account. She used the funds to replace damaged flooring in a rental unit previously occupied by the parties. Ms. Olson alleged the withdrawal was done with Mr. Olson's consent.

Mr. Olson moved for a court order allowing him to use $200,000 from the proceeds of the sale of the Greenacres home. Mr. Olson alleged the parties had a verbal agreement allowing him use of the funds as a down payment for a new home. He cited

Ms. Olson's use of the $25,000 and residence in the Post Falls home as evidence of the agreement. Ms. Olson denied the existence of any such agreement.

A superior court commissioner denied Mr. Olson's motion to use the $200,000. The commissioner determined that the dispute over whether the parties had an agreement about the funds was something to be decided at trial. In addition, the commissioner decided it was best to preserve the $200,000 as a liquid asset to allow for distribution after the legal questions were resolved. Mr. Olson moved for revision of the commissioner's order.

The day of the hearing on the motion for revision, Mr. Olson filed a motion for contempt, based on Ms. Olson's transfer of $25,000. Mr. Olson argued that if the court did not find there was an agreement between the parties regarding use of funds, then Ms. Olson should be held in contempt. Mr. Olson's motion stated that his request for contempt sanctions would be withdrawn if he prevailed on his motion for revision.

The superior court judge denied Mr. Olson's motion for revision. In issuing its ruling, the court commented it was concerned with preserving assets and did not have any evidence regarding how Mr. Olson planned to use the $200,000. The court expressed

concern that Mr. Olson could "have a hair-brain idea" about how to build a home. CP at 180. The court noted that "if Mr. Olson wants to offer some sort of guarantee, that's maybe a different kettle of fish." *Id*. at 188. But because the court's role was simply to take matters as presented on the existing record, the judge said he was not inclined to issue a ruling that differed from the commissioner's.

Approximately three weeks after the ruling denying revision, Mr. Olson filed a motion to revisit his request to use the $200,000. Included with his motion was a proposed guarantee regarding use of the funds. Mr. Olson submitted a quote for the home he intended to build. He proffered that his son would be co-owner of the home. Mr. Olson also pledged a retirement account as security against the $200,000 distribution.

Ms. Olson filed two motions regarding Mr. Olson's actions. She moved to hold him in contempt for transferring the $50,000 from the joint bank account into his bank account. And she moved to strike the motion to revisit and for CR 11 sanctions and attorney fees related to the motion to revisit. According to Ms. Olson, Mr. Olson's motion to revisit was not based on any new information. She also rejected Mr. Olson's claim that the superior court judge's comments could be construed as inviting additional litigation on the issue of the $200,000 distribution request.

Mr. Olson countered by making his own motion for CR 11 sanctions, contending Ms. Olson's motion for sanctions was frivolous because his own motion to revisit was supported by the superior court's comments.

The commissioner held a hearing for the motion to revisit and the reciprocal contempt and sanctions motions. The commissioner denied Mr. Olson's request to use the $200,000, again stating a preference for liquidity. The commissioner granted Ms. Olson's motion for contempt as to the $50,000 and ordered Mr. Olson pay attorney fees related thereto. The commissioner denied Mr. Olson's motion for contempt because Ms. Olson's use of the $25,000 was a necessary expense.

With respect to the CR 11 motions, the commissioner explained he did not "know exactly what" the judge's intent was when he said a guarantee may be a "different kettle of fish." CP at 571. Given this lack of clarity, the commissioner reserved the motions for CR 11 sanctions for the superior court judge.

Mr. Olson again moved for revision of the commissioner's orders. Again, he was unsuccessful. The judge denied he had invited Mr. Olson to return to court with additional evidence and guarantees. Proceeding to Ms. Olson's motion for sanctions, the court said:

5

> I find this revisit motion sanctionable. I—it's as though there's a new creation. It's not a motion for revision. It's not a motion for reconsideration. It's a motion to revisit.
>
> And I agree, [counsel], that in certain civil settings, you might have a motion that was denied and then that motion might be revisited. That motion would be revisited typically at least months, maybe even years, down stream when facts were different. In this case, none of the facts are different.

*Id.* at 625. The court awarded Ms. Olson's request for CR 11 sanctions and denied Mr. Olson's request.

The parties' divorce was finalized in January 2020. Mr. Olson received approximately $250,000, while Ms. Olson kept the Post Falls home.

Mr. Olson and his attorney appeal the superior court judge's adverse CR 11 sanctions as well as the contempt order regarding the $50,000 transfer.[1] Ms. Olson has not filed a response.

## ANALYSIS

*CR 11 Sanctions*

A trial court's imposition of CR 11 sanctions is reviewed for abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). The purpose of CR 11 sanctions

---

[1] It is unclear whether Mr. Olson has appealed the trial court's denial of his motion for CR 11 sanctions. Regardless, we decline to reach this issue as it is not developed. RAP 10.3(a)(6).

is to "'deter *baseless* filings and to curb abuses of the judicial system.'" *Id.* (quoting

*Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992)). Sanctions under

CR 11 should not be utilized as a fee-shifting mechanism. *Biggs*, 124 Wn.2d at 197.

"Because CR 11 sanctions have a potential chilling effect, the trial court should impose

sanctions 'only when it is patently clear that a claim has absolutely no chance of

success.'" *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 745, 218 P.3d

196 (2009) (quoting *Skimming v. Boxer*, 119 Wn. App. 748, 755, 82 P.3d 707 (2004)).

As noted by the commissioner, it was not patently clear what the superior court

judge meant when he said at the initial revision hearing that "maybe" there would be "a

different kettle of fish" if Mr. Olson had supported his request for predissolution

distribution of $200,000 with some sort of guarantee. CP at 188. Given the ambiguity of

the superior court judge's comments, it was not outside the scope of reasonable advocacy

for Mr. Olson's attorney to interpret the court's comments as opening the door to further

litigation on the issue of the $200,000 distribution. We therefore reverse the CR 11

sanctions.

*Contempt*

A party may be held in contempt for intentionally disobeying a temporary order

restraining transfer of funds. *See* RCW 7.21.010; *In re Estates of Smaldino*, 151 Wn.

App. 356, 366, 212 P.3d 579 (2009). We review a contempt order for abuse of discretion. *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995).

Mr. Olson contends that the superior court abused its discretion by finding him in contempt for transferring the $50,000. Although the automatic temporary order restricted transfer of funds, Mr. Olson claims he did not violate the terms of the order because the transfer was made with Ms. Olson's consent. Alternatively, Mr. Olson argues contempt was improper because Ms. Olson did not suffer any prejudice as a result of the transfer.

Mr. Olson's arguments fail on both fronts.

The trial court's automatic temporary order prohibited transfers of funds unless agreed to by the parties in writing. Here, the only alleged agreement was an oral one. The agreement therefore could not serve as a basis for transferring funds.

Mr. Olson's arguments regarding the need for a showing of substantial prejudice fail for lack of legal support. The only authority offered in support of Mr. Olson's claim is *State v. Hazeltine*, 82 Wash. 81, 143 P. 436 (1914), a century-old case concerning a contemptuous publication that was decided in light of the constitutional right to freedom of the press. The constitutional concerns outlined in *Hazeltine* are not applicable here. No showing of substantial prejudice has ever been held to be necessary to find a party in

contempt of a temporary order restraining them from transferring assets. *See Smaldino*, 151 Wn. App. at 366. It was not an abuse of discretion for the superior court to find Mr. Olson in contempt absent a showing of substantial prejudice to Ms. Olson.

CONCLUSION

The trial court's CR 11 sanctions against Mr. Olson and his attorney are reversed. The order of contempt and related fee award is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Fearing, J.

9